IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| D. DIANE WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 06-6252-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Drew L. Johnson
DREW L. JOHNSON, P.C.
1700 Valley River Drive
Eugene, OR  97405

Kathryn Tassinari
HARDER WELLS BARON & MANNING, P.C.
474 Willamette Street, Suite 200
Eugene, OR  97401

 Attorneys for Plaintiff

David R. Johnson
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

   Attorneys for Defendant

JONES, Judge:

     Claimant Dorothy Walters seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income payments ("SSI") under Sections 1602 and 1614(a)(3)(A) of the Social Security Act. _See_ 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the record, I find that the Commissioner's decision must be reversed and remanded for an immediate award of benefits for a closed period of time, between December 8, 2003, and August 14, 2005, and otherwise is supported by substantial evidence, contains no errors of law, and must be affirmed.

## <u>ADMINISTRATIVE HISTORY</u>

     Claimant filed her application for SSI on December 8, 2003, alleging that although she had her medical condition since January 1, 1977, her ability to work was seriously affected beginning March 3, 1993.  Tr. 39.  She reported that she was unable to work because of lower back pain (due to spondylolesthesis) and depression.  Tr. 39, 58.  Her application was denied initially and on reconsideration.  Plaintiff then requested a hearing before an ALJ, which was held April 20, 2006.  Tr. 30.  Claimant, represented by counsel, testified at the hearing, as did an

2 - OPINION AND ORDER

impartial Vocational Expert ("VE").  Tr. 260.  On June 12, 2006, the ALJ issued a decision

denying claimant's application, finding that she was not disabled as defined by the Social

Security Act and therefore was not entitled to SSI.  Tr. 12-21.  The ALJ's decision became the

final decision of the Commissioner on August 24, 2006, when the Appeals Council declined

review.  Tr. 5-7.  See 20 C.F.R. §§ 416.1481, 422.210.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is supported by substantial

evidence and the correct legal standards were applied.  Batson v. Commissioner of Social

Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); see 42 U.S.C. § 405(g).  Substantial

evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  The court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."

Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is such that it supports

more than one rational interpretation, the court must defer to the Commissioner's decision.

Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The Commissioner's decision will not

be reversed for harmless error.  Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050,

1054 (9th Cir. 2006).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the requisite five-step sequential evaluation in determining whether

claimant is disabled.  See 20 C.F.R. § 416.920.  The claimant bears the burden of proof at steps

one through four, at which point the burden shifts to the Commissioner at step five.  Id.

At the first step, the ALJ found that claimant had not engaged in substantial gainful work

activity since her alleged onset date of March 3, 1993.  Tr. 14.  Second, the ALJ found that the

3 - OPINION AND ORDER

claimant suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine status-post surgery, major depressive disorder, somatoform disorder, and personality disorder. Id. At the third step, the ALJ found that the claimant's impairments did not meet or substantially equal the requirements of a listed impairment in Appendix 1, Subpart P, Regulation No. 4. Tr. 15.

The ALJ determined that claimant has the Residual Functional Capacity ("RFC") to perform work at a sedentary exertional level that involves lifting and carrying up to ten pounds. Tr. 16. The ALJ also determined that claimant is capable of sitting for six hours out of an eight-hour workday, and can stand and/or walk for two hours out of the workday. Id. As far as claimant's psychosocial ability, the ALJ found that claimant was capable of maintaining concentration for short periods, understanding and remembering simple instructions, and performing work in environments with low level social interaction. Tr. 17.

Based on these findings, at step four the ALJ determined that claimant was not able to perform her past relevant work as a cocktail waitress. Tr. 18. At step five, the ALJ found that claimant's RFC allows her to perform work existing at significant numbers in the national economy, in particular, as an office helper, an optical goods inspector, and a telemarketer. Tr. 19. In making that determination, the ALJ found that claimant's assertions regarding her ability to do work were lacking in credibility. Tr. 15, 20. Accordingly, the ALJ found that claimant is not disabled as defined by the Social Security Act and denied her application for benefits. Tr. 21.

## STATEMENT OF FACTS

Claimant was born on August 15, 1962; she was thirty-four years old on March 3, 1993, the onset date of her alleged disability, and forty-three on the date of the ALJ's decision. Tr. 12,

4 - OPINION AND ORDER

263.  Claimant has a high school education and six months of college.  Tr. 45, 264.  She lives

with her two adult sons in a mobile home.  Tr. 65.  Just before the onset of her disability,

claimant worked as a cocktail waitress.  Tr. 40.  For a few weeks in 2000, claimant worked as a

room clerk, but was fired because of her inability to stand for long periods of time.  Tr. 265.

<u>SUMMARY OF MEDICAL EVIDENCE</u>

Although claimant alleges disability beginning in 1993, the medical evidence in the

record only covers her medical history between August 2003 and December 2005.  It is apparent

from the medical records that claimant experienced severe back pain up until her surgery in

2005, but evidence of disability is scanty afterwards, and the records that do exist show that the

surgery was successful and she has largely recovered.

1.    <u>Pre-Surgery</u>

An MRI of claimant's lumbar spine performed August 27, 2003, showed grade 1-2

anterolisthesis of L5 and S1 with degenerative disc change, bilateral and lateral recess

compromise, mild to moderate joint effusion, and synovitis.  Tr. 184.

Dr. Kim Eng Koo examined claimant November 21 and 25, 2003.  Tr. 90-94.  Claimant

reported that she had been in a roller-skating accident at age thirteen, and that her back pain had

been increasing since then.  Tr. 92.  Her gait was found to be normal, she had good muscle tone

and strength, and she could walk without difficulty.  <u>Id</u>.  However, an MRI performed

November 24, 2003, revealed spinal stenosis, grade two spondylolisthesis suspicious for

spondylolysis, and Dr. Koo recommended corrective surgery.  Tr. 90.

Dr. Mark Pomerans examined claimant February 24, 2004, for back pain.  Tr. 113.  His

examination revealed moderate pain in the lumbar spine with positive straight leg raising and

moderate pain in her hip, but no problem with tandem walking or range of motion.  Tr. 115.  Dr.

5 - OPINION AND ORDER

Ponerans diagnosed claimant with spondylolisthesis with neurological deficits. Id. The prognosis was dependant on whether claimant elected to have back surgery or not. Id.

In March and May of 2004, Drs. Pitt Tomlinson and Robert Gardner reviewed claimant's records on behalf of the Disability Determination Services. Tr. 117-24, 142-49. Their reports stated that claimant could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and stand and/or walk for six hours out of an eight-hour workday. Tr. 118, 143. The doctors found that claimant's ability to push and pull with upper and lower extremities was unlimited, and that she had no postural limitations. Tr. 118-19, 143-44. Claimant's RFC was determined to be "medium." Tr. 123. The ALJ rejected Drs. Tomlinson's and Garner's opinions, finding that they overstated claimant's RFC. Tr. 16.

From June 3, 2003 until May 5, 2004, the record contains evidence that claimant visited the Pomerans Medical Clinic about once a month for refills of her medications, generally Percocet, Xanax, Loratab, Motrin, and Torocet. Tr. 127-42. Claimant generally stated no complaints during these visits. Id.

On June 23, 2004, Dr. Daniel Uba performed a disability determination physical examination on claimant. Tr. 150. He found that claimant could sit and stand, squat, and ambulate normally. Tr. 152. She had steady gait and normal strength. Id. Dr. Uba found that she had low back pain with radiation to legs, depression, and anxiety, but did not need assistance and was capable of normal daily activities and social functioning. Tr. 153.

On August 24, 2004, claimant underwent a psychiatric examination performed by Dr. Scott Schell. Tr. 154. During the examination, claimant reported that her daily activities included occasional contact with friends, television watching, reading, and driving. Tr. 155. She also reported an inability to sleep well at night due to back pain and thus the need for an

afternoon nap.  Id.  Dr. Schell found that claimant was not exaggerating her symptoms and was

not deluded.  Id.  He found that claimant had a somatic preoccupation and that her daily

activities were restricted.  Id.  His diagnosis was somatization disorder, depressive disorder,

prescription drug dependence, personality disorder not otherwise specified, lumbar spinal

difficulties, "severe" psychosocial and environmental stressors, and rated her Global Assessment

of Functioning at 50.  Tr. 156.  As for claimant's functional capacity, Dr. Schell found that she

was capable of performing simple repetitive tasks, understanding a routine, following

instructions, and developing work relationships.  Tr. 157.  However, he found that her ability to

tolerate stress was limited due to ongoing pain complaints.  Id.

Dr. Elizabeth Anton conducted a psychiatric review of claimant's records September 4,

2004.  Tr. 158.  Dr. Anton found that evidence did not establish the "B" or "C" criteria in the

Listing of Impairments.  Tr. 168-69.  Dr. Anton rated claimant's restriction of daily activities as

"moderate," her difficulties maintaining social functioning, concentration, persistence, and pace

as "mild," and her episodes of decompensation as "none."  Tr. 169.  In sum, Dr. Anton found

that claimant was capable of (1) understanding and remembering simple instructions; (2)

maintaining concentration for short periods; (3) performing tasks in an environment with low-

level social interaction; and (4) performing tasks with low-level pressure and stress.  Tr. 174.

Claimant went to the emergency room at Columbia Capital Medical Center

September 11, 2004 for back pain but was discharged with instructions stating that "[a] specific

cause for your low back pain could not be found."  Tr. 179; see also Tr. 207-217.  She had

arrived in an ambulance because of inability to move, but after being given Xanax her condition

improved.  Tr. 209.

7 - OPINION AND ORDER

An X-ray was performed on claimant's "spine lumbosa" on September 27, 2004.
Tr. 183.  The X-ray showed grade two spondylolysthesis of L5-S1 associated with spondylolysis
with degenerative disc changes.  Id.

On November 22, 2004, claimant visited an urgent care clinic and was seen by Dr. John
Riggs.  Tr. 224.  She stated that she came in because she "overdid it" and also because she ran
out of her Toradol.  Id.  Dr. Riggs described her as having a "dramatic presentation."  She had
positive straight leg raising bilaterally, tenderness in lower spine, and intact sensation.  Id.  She
was given morphine and Loratab.  Tr. 225.

Claimant was admitted in the urgent care division of the Sacred Heart Medical Center
and stayed from November 24-30, 2004.  Tr. 187-201.  She entered the emergency room because
of excruciating back pain and difficulty walking, but while she was at the hospital her condition
improved and she could walk again.  Tr. 187.  She was described in the emergency room notes
as "moaning in bed" but her pain decreased once she was distracted.  Tr. 193.

A lumbar spine CP and CT scan were performed on claimant December 5, 2004.
Tr. 106-08.  The scans revealed spondylolisthesis and spondylolysis, degenerative disc disease,
and reactive peridiscal sclerosis.  Id.

On December 16, 2004, Dr. Geoffrey Simmons examined claimant and reviewed her
MRI, CP, and CT scans.  Tr. 223.  Dr. Simmons stated in the examination notes that claimant
had a "train wreck of an MRI of her lower back."  Id.

Dr. Scott Kitchel examined claimant December 30, 2004, and found that claimant's back
condition needed surgery as soon as possible, since if it were left untreated muscle weakness
could set in, which would be irreversible.  Tr. 236-39.

8 - OPINION AND ORDER

2.    <u>Post-Surgery</u>

On February 14, 2005, claimant underwent anterior lumbar fusion surgery, followed sequentially by posterior lumbar laminectomy infusion surgery.  Tr. 243.  When she left the hospital February 17, she was ambulating without assistance.  <u>Id</u>.

During a post-operative examination conducted by a nurse on March 3, 2005, claimant stated that she has "been doing excellent."  Tr. 232.  Her leg pain and numbness had resolved entirely, and she was "not using much medication."  <u>Id</u>.  Claimant's strength and sensation were symmetrical.  Physical therapy was planned for claimant's recovery.  <u>Id</u>.  A lumbrosacral X-ray performed that day showed no complications from the surgery.

On April 4, 2005, Dr. Kitchel examined claimant for follow-up of her surgery.  Tr. 231.  His report stated that things were going "reasonably well," claimant had good alignment of internal fixation, and that claimant was "neurologically intact."  <u>Id</u>.

A lumbar spine X-ray performed September 8, 2005 was normal, revealing posterior fusion and cage-type disc implants.  Tr. 234.

During an office visit with Dr. Simmons October 23, 2005, claimant reported no neck pain or stiffness.  Tr. 221.  Her range of motion was normal and she had no deformities or weaknesses.  <u>Id</u>.  Claimant reported "no depression or sadness, irritability or anger."  Dr. Simmons found that her major issue was smoking and degenerative disc disease.  Tr. 222.  He stated that he would determine if another MRI was necessary.  <u>Id</u>.

Dr. Simmons examined claimant again on December 16, 2005.  Tr. 219.  Her medications were reviewed, an MRI was gone over, and disc narrowing was discussed.  Tr. 219.

## DISCUSSION

Claimant asserts that the ALJ's decision was not based on substantial evidence as required by 42 U.S.C. 405(g).  First, claimant argues that the ALJ erred in failing to address the 2004 report written by claimant's mother, Marlene Shook.  (Pl.'s Brief at 12.)  Next, claimant argues that the ALJ failed to give clear and convincing reasons for rejecting claimant's testimony.  (Pl.'s Brief at 13).  Finally, claimant asserts that the Commissioner did not satisfy her burden of proving that claimant is capable of performing "other work" in the national economy. (Pl.'s Brief at 14).

1.    **The ALJ's Rejection of Lay Evidence**

Claimant asserts that the ALJ improperly failed to address the statement prepared by Marlene Shook on May 20, 2004.  In her report, Shook stated that claimant required assistance with getting in and out of cars, getting up from sitting, bathing, dressing, and using the bathroom.  Tr. 65-68.  Shook stated that claimant could not stand long enough to prepare a meal, and that her children cooked for her.  Tr. 67.  The report also stated that claimant needed special reminders to take care of personal hygiene and take her medication.  Id.  Regarding claimant's psychiatric impairments, Shook stated that claimant "talks to people on the computer" and talks on the phone daily, has no problems paying attention or following instructions, adapts to stress well, and exhibits no unusual behavior.  Tr. 69-71.

The ALJ did not acknowledge or discuss Shook's report in his opinion, presumably because it only concerned claimant's functional abilities before she had surgery.  Ordinarily, an ALJ must provide "germane reasons" for rejecting lay witness testimony, but the ALJ need not provide reasons for rejecting lay witness testimony that is unsupported by the evidence on

10 - OPINION AND ORDER

record.  Lewis v. Apfel, 236 F.3d 502, 511 (9th Cir. 2001); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

The Commissioner argues that the ALJ did not need to address Shook's statements because they were not useful in assessing claimant's residual functional capacity, and to the extent that lay witness statements do not concern how the claimant's impairments affect their ability to work, they do not need to be discussed by the ALJ.  (Def.'s Brief at 6, citing Stout v. Commissioner, supra, 454 F.3d at 1053).

The problem here is that claimant's application covers both the pre-surgery period and post-surgery period.  She applied for SSI benefits December 8, 2003.  Tr. 291.  She did not undergo the fusion surgery until February 14, 2005.  Tr. 243.  As recounted above, the record contains multiple MRI and CT scans invariably revealing spondylolisthesis, spinal stenosis, and degenerative disc disease, accompanied by reports from examining and treating physicians which establish claimant's lower back impairments during that time period.  See Tr. 90, 106, 110, 183-84, 223-24.  Thus, there was objective medical evidence to support Shook's statement regarding claimant's functional capacity *at the time the statement was made*.  However, claimant's condition, as reflected in the post-surgery medical record, improved to a point that rendered Shook's statements irrelevant to the period after surgery.

Thus, the ALJ erred in failing to address Shook's statements to the extent her statements were applicable to the period of time before claimant's fusion surgery.  The effect of that error is discussed infra.

2.    **The ALJ's Credibility Determination**

Claimant asserts that the ALJ failed to provide clear and convincing reasons for rejecting her testimony as not entirely credible.  (Pl.'s Brief at 13).  The claimant has the burden of

producing objective evidence of an underlying impairment which could "reasonably be expected to produce the pain or other symptoms alleged." Cotton v. Bowen, 799 F.2d 1403, 1406 (9th Cir. 1986). However, "an ALJ cannot be required to believe every allegation of disabling pain." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). When the claimant produces objective evidence of an impairment and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ is responsible for resolving conflicts and ambiguities in testimony and medical evidence. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

In finding claimant's statements regarding her impairments not entirely credible, the ALJ reasoned that her testimony was inconsistent with her medical history and reports of treating and examining physicians. Tr. 15; see SSR 96-2p, 96-6p. Claimant's testimony solely concerned her impairments at the time of the hearing, which was more than a year after her surgery. Post-surgery, her medical records indicate that her condition has greatly improved. Claimant underwent physical therapy, and during the post-op visits the progress notes stated that her progress was going "reasonably well," and the results of the examinations were normal. See Tr. 219-22, 231-34. At the hearing, claimant first testified that she had a "bulged disc" in her back, but then later acknowledged that the surgery has worked and her disc was not slipping anymore. Tr. 268-69. She testified that she had completely recovered from the surgery. Tr. 269-70. Claimant asserted at the hearing that she also had a neck impairment that may require surgery. Tr. 270. Yet in an office visit with Dr. Simmons in October 2005, claimant reported no neck pain, stiffness or weakness. Tr. 221. Her main problems, according to Dr. Simmons, are her smoking addiction and degenerative disc disease, which seems to be controlled

12 - OPINION AND ORDER

by medication.  Tr. 222.  Therefore, the ALJ's reason that claimant's testimony was inconsistent with her medical record and reports of treating and examining physicians at the time of the hearing was supported by substantial evidence on the record, and this court may not engage in second-guessing.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

3.    **The ALJ's Finding at Step Five**

As previously discussed, if the claimant carries her burden of proof at steps one through four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work that exists in significant numbers in the national economy.  See 20 C.F.R. § 416.920.  To meet this burden, the Commissioner may elicit testimony from an impartial vocational expert, based on a hypothetical that includes all of claimant's limitations that are supported by substantial evidence on the record.  Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2005). Claimant argues that the Commissioner did not carry her burden in step five and thus the ALJ's decision at step five was not based on substantial evidence.  (Pl.'s Brief at 14).

The hypothetical presented to the VE at the hearing reflected a forty-three-year-old woman with a high school education with the following limitations: "occasionally lifting 10 pounds, frequently 10 pounds, this person would be able to stand or walk for about two hours out of an eight-hour day, sit for six hours out of an eight-hour day."  Tr. 277.  Additionally, the ALJ included the limitations of simple routine tasks and instructions, occasional contact with the public and with co-workers, and an option to change positions every fifteen to thirty minutes.  Id. Claimant does not dispute the hypothetical presented to the VE, rather, she disputes the VE's answer to the hypothetical and the ALJ's reliance on the VE's testimony.  (Pl.'s Brief at 15).

The VE testified that claimant would be able to perform the following jobs existing in significant numbers in the national economy:  office helper, optical goods inspector, and

13 - OPINION AND ORDER

telemarketer or telephone canvasser.  Tr. 278.  Regarding the telemarketing job, claimant argues

that her limitation of occasional contact with the public does not comport with the level of

interaction with the public involved in telemarketing.  (Pl.'s Brief at 15).  According to the

Dictionary of Occupational Titles, the job of telemarketer involves frequent talking and listening

to the public with the goal of persuading people.  D.O.T. 299-357-014.  As claimant is limited to

only "occasional direct public contact," claimant argues that "frequent" talking to the public over

the telephone would overstep the bounds of her limitations.  (Pl.'s Brief at 15).

 The VE specifically stated that the job of telemarketer was "without direct public

contact."  Tr. 278.  As the job is performed over the telephone, claimant's interaction with the

public would be strictly indirect, and there was no limitation on indirect public contact in the

hypothetical presented to the VE.  There is no evidence in the record indicating that claimant is

incapable of interacting with the public by telephone.  Dr. Anton rated claimant's ability to

interact with the general public as "not significantly limited."  Tr. 173.  Indeed, in her report,

Shook stated that claimant talked to people on the telephone and on the internet daily.  Tr. 69.

Therefore, the ALJ's determination that claimant is capable of performing the job of

telemarketer was based on substantial evidence.

 The ALJ also properly found that claimant was capable of performing the jobs of office

helper and optical goods inspector.  Claimant asserts that, as the VE testified, these jobs cannot

be performed by someone who has to lie down for two hours daily and might miss more than

two days of work a month.  Tr. 279; (Pl.'s Brief at 15).  However, those two limitations were not

included in the hypothetical because they are not based on substantial evidence.  The

hypothetical presented to the VE need not contain limitations based on the claimant's properly

discredited testimony and unsupported by substantial evidence.  Bayliss v. Barnhart, 427 F.3d

14 - OPINION AND ORDER

1211, 1217 (9th Cir. 2005).  As previously mentioned, medical evidence of claimant's limitations following her surgery is scant and not sufficient to establish the limitations of having to lie down for two hours during the workday and missing over two days a month.  There is nothing in the record to support claimant's assertion that she has to lie down for two hours during a normal workday, or that her condition requires her to miss more than two days of work per month.  The ALJ's decision at step five was free of error as applicable to the claimant's functional capacity at the time of the hearing.

4.        **Remedy for ALJ's Error in Handling Lay Testimony**

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which * * * has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ found claimant "not disabled" under the Social Security Act, based on the medical evidence in the record and the testimony of the VE.  Although the ALJ's disability determination for the period after claimant's surgery is supported by substantial evidence, the ALJ's decision does not properly address the nearly two-year period before claimant's surgery.

For the pre-surgery period, the ALJ erred in finding that claimant's alleged disability was unsupported by objective medical evidence.  It is undisputed that claimant underwent a major surgical operation on her lumbar spine to correct what was, previous to her surgery, a severely debilitating condition.  Dr. Koo's medical opinion dated November 23, 2003, stated that claimant was experiencing "severe radicular pain and motor weakness," and the examination revealed spinal stenosis and grade two spondylolisthesis.  Tr. 90.  Dr. Simmons described claimant's MRI as a "train wreck" and Dr. Kitchel described it as showing "severe foraminal

15 - OPINION AND ORDER

stenosis." Tr. 223, 238. The examining and treating physicians consistently found that claimant suffered from grade two spondylolisthesis from spondylolysis, which is a lumbar spine condition in which a vertebra moves forward onto the one below it. Physician's Desk Reference Medical Dictionary 1678 (2d. Ed. 2000). The "grade two" classification indicates that 50 percent of the vertebra has slipped out of place. <u>Id</u>. Symptoms of spondylolisthesis may include severe back pain and weakness, leg pain, electric-shock sensations running down legs, and nerve damage. <u>Id</u>. Therefore, the pain claimant experienced before surgery likely would have caused an inability to engage in substantial gainful activity, as shown by objective medical evidence in the record.

The ALJ's characterization of claimant's symptoms pre-surgery as "relatively minor" is likewise unsupported by substantial evidence. Shook's statement, prepared in May 2004, stated that claimant was virtually bedridden, requiring assistance bathing, dressing, and getting in and out of chairs, cars, and her bed. Because the ALJ ignored Shook's statements, this court credits her statements as true. Consequently, the ALJ's characterization of claimant's symptoms as minor cannot stand in the face of the evidence on the record.

This brings me to the issue of remedy. The decision whether to remand for further proceedings or to award benefits is within the court's discretion. <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). The Ninth Circuit has articulated three  factors to guide a court's decision to reverse for an award of benefits rather than for further proceedings. First, the ALJ must have failed the provide legally sufficient reasons for rejecting evidence tending to establish the claimant's disability. Second, there must be no outstanding issues that must be resolved before a determination of disability

can be made.  And third, it must be clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Smolen v. Chater, 80 F.3d 1279, 1292 (9th Cir. 1995); Issacson v. Apfel, 185 F.3d 867, 869 (9th Cir. 1999).

In this case, an award of benefits is appropriate because the ALJ failed to provide legally sufficient reasons for rejecting the lay witness testimony of claimant's mother, Marlene Shook, as applicable to the period of time between when claimant filed for SSI and her recovery from surgery.  Second, there are no outstanding issues that must be resolved, as all of the opinions of claimant's treating and examining physicians in the record have been credited by the ALJ. Finally, it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Claimant did not apply for "closed period" SSI benefits; however, this court has discretion to award benefits for a closed, rather than indefinite, period.  See Moore v. Comm'r of the SSA, 278 F.3d 920, 926 (9th Cir. 2002).  Because the ALJ's determination that claimant was not disabled during the time period between her application for benefits and her recovery from surgery was not based on substantial evidence, claimant should be awarded benefits for that period of time.  The record lacks any medical evidence before August 2003 (when claimant underwent an MRI), and contains nothing between that date until late November 2003, just before claimant filed her application on December 8, 2003.  I conclude, therefore, that the closed period should begin on the application date.  Claimant's surgery took place on February 14, 2005.  The record reveals it took claimant approximately six months to resume work activities after lumbar fusion surgery, see also  J. A. Kozak & J. P. O'Brien, Simultaneous Combined Anterior and Posterior Fusion: An Independent Analysis of a Treatment for the Disabled Low

<u>Back Pain Patient</u>, 15 Spine 322, 328 (1990); consequently, I find that the closed period of benefits should end six months after surgery, on August 15, 2005.

## CONCLUSION

Based on a thorough review of the record, the decision of the Commissioner is reversed in part and remanded for an award of benefits for a closed period between December 8, 2003, and August 14, 2005.  The Commissioner's decision is otherwise supported by substantial evidence, contains no error, and is affirmed.

DATED this 18th day of September, 2007.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

18 - OPINION AND ORDER